UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN HOGAN,

                       Petitioner,                    **DECISION AND ORDER**
                                                           **No. 03-CV-6321(VEB)**

     -vs-

CALVIN WEST, Acting Superintendent,

                       Respondent.
_____

## I.    INTRODUCTION

       Petitioner, John Hogan ("Hogan"), filed this *pro se* petition for a writ of habeas corpus

challenging his conviction in Monroe County Court on charges of one count of first degree rape

(N.Y. Penal Law § 130.35(1)), one count of second degree rape (N.Y. Penal Law § 130.30), four

counts of first degree sodomy (N.Y. Penal Law § 130.50(1)), four counts of second degree

sodomy (N.Y. Penal Law § 130.45), and two counts of first degree  sexual abuse (N.Y. Penal

Law § 130.65(1)). The parties have consented to disposition of this matter by the undersigned

pursuant to 28 U.S.C. § 636(c).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

       The conviction at issue here stems from Hogan's allegedly having forced his sister-in-

law, K.F., to engage in various sexual activities over the course of two years when she was

eleven- and twelve-years-old. K.F., who was fifteen-years-old at the time of Hogan's jury trial in

Monroe County Court (Berry, J.), testified that one of the first incidents occurred in March 1993

when she had been left in the care of Hogan and his now-estranged wife while her parents were

away in Toronto. K.F. testified that after Hogan took her out shopping, he brought her back to

his and his wife's apartment on Garson Avenue in the City of Rochester and made her watch a pornographic film featuring a man and woman having sex in front of a spectator. As K.F. was on the bed watching this, Hogan began to kiss her on the mouth and touch her vagina and breasts underneath her clothes. K.F. testified that she told him to stop, and attempted to physically resist him, but she was unable to do so because Hogan was much bigger than she was. Hogan told her that he wanted to have sex with her; when she said no, he did not pursue the idea. K.F. recalled that there were several of his guns in the bedroom, about three feet away. T.355-62, 425.[1] This incident gave rise to counts one through three of the indictment which alleged first degree sexual abuse.

The next morning, a Saturday, after taking her out for breakfast, Hogan brought K.F. back to the apartment and made her watch the same film. After kissing her, he removed her clothes. K.F. testified that she was afraid and "didn't know what was going to happen." Hogan put a condom on his penis and inserted it into her vagina. K.F. testified that "[i]t began to hurt so he didn't go in any more." Hogan then made K.F. get on her hands and knees and entered he her anally; K.F. did not resist because Hogan "was bigger than [her] and [she] wasn't sure what to do."[2] After Hogan removed his penis from her anus, Hogan told her that he "wanted [her] to have oral intercourse with him." K.F. acceded to this request. T.363-67, 425.

After he finished assaulting her, Hogan told K.F. not to tell anyone what had happened, threatening to "kill [her]" if she did so. K.F. believed him because he had told her stories about setting someone's house on fire and beating up a man in bar so badly that the man had to go to

---

[1] Citations to "T.___" refer to the trial transcript.

[2] At the time of his arrest, the police recorded petitioner's height as 6'1" and his weight as 190 pounds.

the hospital. K.F. also knew that, in addition to his guns, Hogan kept a large knife in his truck. K.F. testified that "[she] was scared." T.367-69. The Saturday morning incident formed counts four through seven of the indictment which alleged first degree rape, second degree rape, first degree sodomy and second degree sodomy.

More instances of abuse followed over the next two years. The next incident with which Hogan was charged occurred at K.F.'s uncle's wedding at Pineway Park in Spencerport on May 28, 1994. After the wedding, K.F. changed into play clothes, and she and Hogan tossed a ball around. He threw it far into the woods and when she went after it, he followed her and pulled her farther away from the rest of the wedding party. Pushing her up against a tree, Hogan told her to take off her pants, which she did. Hogan then performed oral sex on her, putting his mouth on her vagina. Hogan then turned her around and tried to have anal intercourse with her. K.F. testified that "[i]t didn't really succeed because it hurt, so he pulled out." Hogan again threatened to kill her if she ever told anyone. T.372-77. The Pineway Park incident gave rise to charges eight through thirteen of the indictment alleging three counts of first degree sodomy and three counts of second degree sodomy.[3]

K.F. recounted several further threats. Once, when Hogan observed her writing a note to her friend, he warned her never to write anything about what he did to her or he would kill her. However, K.F. eventually confided in some of her friends, who advised her to talk to her mother and her sister. In October 1995, they reported the pattern of sexual abuse to the police. T.400, 411-13. At the close of her testimony, K.F. described a distinctive mark on Hogan's penis, which he had told her had resulted from being cut by a zipper. T.413-14.

---

[3]     The prosecution did not present evidence concerning counts fourteen through seventeen of the indictment, which dealt with sexual abuse alleged to have occurred in June and July of 1995.

Hogan's wife, who was estranged from him at the time of trial, could not recall the dates of her parent's trip to Toronto but recalled taking care of K.F. and her brother. She also testified that her husband was at home that weekend. Hogan worked at some odd jobs at the time, but none of them required being away overnight. His wife also confirmed the presence of pornographic videotapes in their bedroom and a scar on Hogan's penis which he attributed to a zipper injury. T.517-21, 525. His wife recalled trying to find Hogan at the wedding at Pineway Park in May 1994. She testified that he and K.F. were "gone together" and were missing for some time. T.521-24.

K.F.'s brother recalled Hogan and his wife supervising him while their parents were on a trip to Toronto during a weekend in March of 1993. On that Saturday morning, he remembered his sister coming back with Hogan with doughnuts or bagels. He also recalled his sister being missing at the wedding in Pineway Park. T.541-44, 554.

K.F.'s mother identified a photograph taken of her daughter and Hogan in the summer of 1993; K.F. did not even come up to Hogan's shoulder. K.F.'s mother dated the trip to Toronto as from March 3 to March 7, 1993, and her brother's wedding in Pineway Park as occurring on March 28, 1994.

Kelly Battoglia ("Battoglia"), an OB/GYN nurse practitioner who examined K.F. on November 15, 1995, testified that the girl's hymen was not intact but no signs of trauma were present. T.483. When asked what her findings were, Battoglia answered, "Basically what I have written here, and that was my assessment as follows: Patient claims quote sexual abuse." T.482. Defense counsel objected, and the trial court admonished the witness, "That's not a finding." T.483. The court asked Battoglia, "What did you find as to your physical examination of [K.F.],

allright?" *Id.* The witness answered, "Otherwise normal GYN exam." Battoglia testified that she

was not able to tell whether or not the victim had had vaginal intercourse or anal intercourse.

T.484. According to Battoglia, there would have to be "specific circumstances" (*e.g.*, live sperm

in the vagina) in order to be an indication that the patient had vaginal intercourse. With respect

to anal intercourse, there "really [wa]sn't any way for [her] . . . to tell whether someone had anal

intercourse or not. T.484. On cross-examination, Battoglia admitted that the fact that the hymen

was not intact did not necessarily mean that the victim had sexual intercourse. T.486. Battoglia

testified as to other ways that a girl's hymen could be broken–for instance, if the girl used

tampons or fell while riding a bicycle and hit her pelvic area on the cross-bar. T.486.

Anthony Capomaccio ("Capomaccio"), a manager of a nightclub, testified for the defense

that he had employed Hogan "on and off since 1989," including the first week of March 1993,

when Hogan had been hired to "watch some equipment" and clear trees at a building site in

Irondequoit. There was a small barn on the property where Hogan "could have" stayed

overnight. However, just prior to trial Capomaccio discovered a permit indicating that

construction at this job site had not been authorized to begin until March 22, 1993. Nevertheless,

Capomaccio reiterated that Hogan had been at the site "around the clock" for the entire weekend

of March 5 to March 7, 1993. On cross-examination, Capomaccio admitted that he, personally,

was not at the job site. He conceded, "[I]f I wasn't there, I guess he could leave." Capomaccio

kept no payroll records or time sheets because Hogan was paid in cash. Capomaccio testified, "I

don't have work records for anybody." T.573-97.

Hogan testified in his own behalf that he had been working for Capomaccio during

March 1993, sleeping at the job site overnight "to keep an eye on the equipment." Hogan denied

having brought K.F. to his house during the weekend of March 5 to March 7, 1993, or having sexually assaulted her. He was present at Pineway Park on May 28, 1994, where he recalled playing sports with "[K.F.] in particular." However, he denied having gone into the woods with her. Hogan testified that he discovered K.F. viewing his collection of pornographic videotapes without permission. He stated that K.F.'s brother once had accidentally seen the scar on Hogan's penis, which he described to the brother as having been caused by a zipper, but was actually a birth mark. T.602-09.

Hogan testified that K.F. was "very upset" when she heard of his plans to leave his wife and child and move to South Carolina in September 1995. Hogan also claimed that he offended K.F.'s brother by "kicking him out" of his house after the boy had come to live with him and his wife. According to Hogan, K.F.'s brother had violated the rules that they had set. T.608-13.

At the close of the proofs, the prosecutor consented to the dismissal of count of three of the indictment, which charged that Hogan had forcibly touched K.F. with his penis during the weekend in question in March 1993. K.F. had been expected to testify that Hogan did so on the first day of that weekend. The jury returned a verdict of guilty on all of the remaining counts submitted to it.

At sentencing, after hearing argument from the attorneys, the trial court declined to sentence Hogan as a persistent felony offender and instead sentenced him as a second felony offender, which was beneficial to Hogan. The court imposed sentences with a cumulative minimum of twenty-two and one-half years and a cumulative maximum of forty-five years.

Represented by new counsel, Hogan appealed his conviction. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction.

*People v. Hogan*, 292 A.D.2d 834, 739 N.Y.S.2d 311 (App. Div. 4th Dept. 2002). The New York

Court of Appeals denied leave to appeal. *People v. Hogan*, 98 N.Y.2d 676, 774 N.E.2d 230, 746

N.Y.S.2d 46 (N.Y. 2002).

This habeas petition followed. For the reasons set forth below, habeas relief is denied and

the petition is dismissed.

## III.   DISCUSSION

### A.   Standard of Review

The filing of Hogan's petition post-dates the enactment of Anti-terrorism and Effective

Death Penalty Act ("AEDPA"), which revised the federal habeas statute. To prevail under 28

U.S.C. § 2254, as amended in by AEDPA in 1996, a petitioner seeking federal review of his

conviction must demonstrate that the state court's adjudication of his federal constitutional claim

resulted in a decision that was contrary to or involved an unreasonable application of clearly

established Supreme Court precedent, or resulted in a decision that was based on an

unreasonable factual determination in light of the evidence presented in state court. *See* 28

U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

### B.   Procedural Default

Respondent contends that several of Hogan's claims are procedurally defaulted and

barred from federal habeas review due to the state appellate court's reliance on an "adequate and

independent state ground" in dismissing them. In particular, respondent points to Hogan's claims

(1) that the trial court erred in failing to issue an alibi instruction to the jury, (2) that the trial

court erred in failing to include the victim's testimony on cross-examination when the jury

requested a read-back of a portion of her testimony, and (3) that he was denied his right to a

speedy trial. All of these claims were rejected by the Appellate Division as being "not preserved for [their] review" under New York Criminal Procedure Law § 470.05(2). *See People v. Hogan*, 292 A.D.2d at 834, 835.

As the Second Circuit has explained, the "independent and adequate state ground" doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (The Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.")). This "rule applies whether the state law ground is substantive or procedural." *Id.* (citing *Coleman*, 501 U.S. at 729). Out of principles of "comity and federalism," then, federal habeas courts "faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review." *Id.* (citing *Coleman*, 501 U.S. at 729; *Washington v. James*, 996 F.2d 1442, 1447-48 (2d Cir. 1993)). An exception to this doctrine "obtains only if the petitioner demonstrates *both* good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule." *Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)) (emphasis added); *see also Coleman*, 501 U.S. at 750.

In Hogan's case, the Appellate Division found that his claims were procedurally defaulted because he failed to comply with New York's contemporaneous objection rule, which is set forth in C.P.L.§ 470.05(2).[4] The Second Circuit and the Supreme Court have held that a

---

[4] Under New York law, "[a]s a general rule points which were not raised at trial may not be considered for the first time on appeal." *People v. Thomas*, 50 N.Y.2d 467, 471, 429 N.Y. S.2d 584 (N.Y. 1980) (citing C.P.L. § 470.05(2)); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("Under § 470.05(2), an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order

state's contemporaneous objection requirement is an independent state ground that precludes habeas review. *See Garcia v. Lewis*, 188 F.3d at 82 ("There is no question that the Appellate Division's explicit invocation of the procedural bar [set forth in C.P.L. § 470.05(2)] constitutes an 'independent' state ground, even though the court spoke to the merits of Garcia's claim in an alternative holding[.]") (citing *Harris v. Reed*, 489 U.S. 255, 263, 264 n. 10 (1989)); *see also Wainwright v. Sykes*, 433 U .S. at 86 (holding that federal habeas petitioner who has failed to comply with Florida's state-law contemporaneous-objection rule at trial had to show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim); *accord Murray v. Carrier*, 477 U.S. 478, 485-92, 497 (1986).

Under the circumstances presented here, the Court also finds that the Appellate Division's reliance on C.P.L. § 470.05(2) was an "adequate" state ground, it being "based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188 F.3d. at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). The Court finds that New York state courts routinely and evenhandedly employ the contemporaneous objection rule in holding jury instruction claims, read-back claims, and speedy trial claims unpreserved due to the want of a timely objection. *E.g.*, *People v. Brooks*, 292 A.D.2d 540, 739 N.Y.S.2d 585 (App. Div. 2d Dept. 2002); *People v. Sease*, 305 A.D.2d 700, 759 N.Y.S.2d 695 (App. Div. 2d Dept. 2003); *see also United States ex rel. Hogan v. Bara*, 578 F. Supp. 1075, 1081 (E.D.N.Y. 1983) ("Where petitioner did not object to trial court concerning alleged denial of speedy trial, thus

---

to preserve the objection for appellate review.") (citing, *inter alia*, *People v. Jones*, 81 A.D.2d 22, 29, 440 N.Y.S.2d 248 (App. Div. 2d Dept. 1981) (explaining that "the doctrine [of preservation of error] is perhaps more properly conceived as a method of 'procedural default', whereby the failure to raise a timely claim of error–whether the omission be intentional or inadvertent–consigns the objection to permanent repose")).

waiving that claim under New York Criminal Procedure Law, which constituted independent and adequate state ground for affirmance of conviction by the New York Supreme Court, Appellate Division, federal review of petitioner's constitutional claim was thus precluded."). Thus, the Court is satisfied that the Appellate Division's holding denying the claims under C.P.L. § 470.05(2) "rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. at 729.

The Court, therefore, is barred from engaging in habeas review of this claim unless Hogan shows "cause for the default and actual prejudice" or that a "fundamental miscarriage of justice" will result from not considering the claim, *Id.* at 750. In this context, "'cause' . . . must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753 (emphasis in original). "Actual prejudice" requires "showing, not merely that the errors at [petitioner's] trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Hogan has demonstrated neither. Furthermore, Hogan has not made a colorable showing of actual innocence, as he is required to do in order to benefit from the "fundamental miscarriage of justice" exception. *See Schlup v. Delo*, 513 U.S. 298, 314-16 (1995). Because Hogan has failed to make a sufficient showing to excuse the procedural default, federal review of these claims is barred.

### C.     Exhaustion

Respondent asserts that Hogan's various claims of prosecutorial misconduct and

ineffective assistance of trial counsel[5] are unexhausted due to Hogan's failure to raise them in state court but nevertheless procedurally defaulted because Hogan has no available means of redress were he attempt to exhaust them in state court. This Court agrees.

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119-20.

Hogan did not raise a claim of prosecutorial misconduct on direct appeal, and he did not assert it in the context of a collateral motion to vacate the judgment of conviction. Therefore, the claim remains unexhausted. However, it is clear that Hogan is procedurally barred from returning to state court in order to exhaust this claim because he has already utilized the one direct appeal to which he is entitled. *See* N.Y. Court Rule 500.10(a). Furthermore, a collateral motion pursuant to C.P.L. § 440.10 would be futile because the motion court is statutorily mandated to deny the claim of prosecutorial misconduct on the basis of C.P.L. § 440.10(2)(c)

---

[5]      Respondent states that Hogan also has asserted a claim of ineffective assistance of appellate counsel that is also unexhausted. The Court has carefully reviewed Hogan's petition (Docket #1), amended petition (Docket #5) and memorandum of law (Docket #12). In none of them has Hogan raised a claim of ineffective assistance of appellate counsel. In his memorandum of law, he clarifies that his ineffective assistance claim relates to trial counsel. Moreover, Hogan has submitted appellate counsel's brief in support of his habeas petition, stating his cover letter that he "could not present [his] argument any better." *See* Petition (Docket #1).

because the underlying facts were contained within the trial transcript and therefore evident on the record. For this reason, the C.P.L. § 440 court would find that Hogan could have raised the claim on direct appeal but unjustifiably failed to do so. Thus, even though the claim is deemed exhausted, it is nevertheless procedurally defaulted. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

The Court is precluded from considering this procedurally defaulted claim unless Hogan "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted); *see also Schlup v. Delo*, 513 U.S. at 321 (a fundamental miscarriage of justice requires a showing of "actual innocence"). Hogan does not allege cause or prejudice, nor does he attempt to show that a fundamental miscarriage of justice will occur should I decline to review his claim.  Indeed, I find no basis on this record for overlooking the procedural default. Therefore, Hogan's claim the prosecutor made improper remarks during her summation is precluded from habeas review.

Hogan contends that trial counsel was ineffective because he "failed to object during summation and told petitioner that he could not object during summation." Petitioner's Memorandum of Law at 7 (Docket #12). Hogan does not provide any further argument under this point heading, nor does he identify the comments to which trial counsel should have objected. The only allegation of ineffective assistance of counsel which Hogan raised on direct appeal appears to be that trial counsel was ineffective in failing to request an alibi jury instruction; the Appellate Division held that trial counsel was not ineffective on this basis. *People v. Hogan*, 292 A.D.2d at 834. Thus, to the extent that this claim is based on the failure to

object to prosecutorial misconduct, it appears to be unexhausted because Hogan failed to raise it on direct appeal or in a collateral motion attacking his conviction. However, the claim must be deemed exhausted but procedurally defaulted because there is no corrective process available to Hogan in state court were he to return there for exhaustion purposes.

The Court notes that C.P.L. § 440.10(1)(h) of the New York Criminal Procedure Law does provide a method by which individuals can collaterally attack their convictions after they have used up their one direct appeal. Under C.P.L. § 440.10(2)(c), however, a New York court must deny a § 440.10 motion where the movant unjustifiably failed to raise the constitutional violation on direct appeal despite a sufficient record to have permitted such an appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c); *see also Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997). Denial of a C.P.L. § 440.10 motion, pursuant to § 440.10(2)(c), will not always be appropriate in the ineffective assistance context, such as when the facts supporting the instance of ineffective assistance of counsel appeared outside the record. *Reyes*, 118 F.3d at 139 (citing *People v. Harris*, 109 A.D.2d 351, 491 N.Y.S.2d 678, 687 (App. Div. 2d Dept. 1985) (holding that trial record was insufficient to require that an ineffective assistance of counsel claim relating to alleged faulty legal advice be brought on direct appeal), *appeal denied*, 66 N.Y.2d 919, 498 N.Y.S.2d 1034, 489 N.E.2d 779 (N.Y. 1985)).

Here, however, Hogan represents that the instances of ineffective assistance are premised on an alleged failure to object to the prosecutor's summation. Thus, any errors by trial counsel would be contained within the trial record. Moreover, Hogan had new counsel representing him on direct appeal, and this attorney *did* raise an ineffective assistance of trial counsel claim. There is no justifiable reason, then, why Hogan could not have raised his ineffective assistance of

counsel claims on direct review, especially since he had different counsel representing him. *See Reyes*, 118 F.3d at 139-140 (holding that petitioner's ineffective assistance of trial counsel claim–which was premised on counsel's failure to object to the reasonable doubt charge–did not fall within any of the exceptions noted by the New York courts and should be deemed exhausted because, if it were raised on a C.P.L. § 440.10 motion, the state court would deny it pursuant to C.P.L. § 440.10(2)(c)).  Because there is no reason to believe that the trial record was in any way insufficient to allow the Appellate Division to hear an ineffective assistance of counsel claim based on the failure to object to the prosecutor's summation, any attempt by Hogan to seek state court review pursuant to C.P.L. § 440.10 would be futile. *See* N.Y. Crim. Proc. Law § 440.10(2)(c).

Thus, although Hogan's claim of ineffective assistance is deemed exhausted, the Court nonetheless finds that, by defaulting on that claim in state court, Hogan has forfeited that claim on federal habeas review. *See Reyes*, 118 F.3d at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman*, 501 U.S. at 735 n. 1). Hogan has not attempted to show cause for the default, or prejudice resulting therefrom; indeed, neither cause nor prejudice exist on the record before this Court. Furthermore, Hogan has not made a showing of actual innocence so as to justify the "fundamental miscarriage of justice" exception. Accordingly, Hogan's ineffective assistance claim is barred from habeas review. *See Reyes*, 118 F.3d at 140; *accord, e.g., Redd v. Quinones*, No. 98 Civ. 2604 LBS, 1998 WL 702334, at *4 (S.D.N.Y. October 7, 1998).

**D.**     **Merits of the Petition**

**1.**     **"Duplicitous" indictment**

Hogan contends that the dismissal of count three of the indictment rendered the ensuing four counts of rape and sodomy (counts four through seven) "duplicitous." These five counts all related to the assault that allegedly occurred on the weekend in March 1993 when the victim's parent were away. Count three charged first degree sexual abuse by Hogan and alleged that between March 5 and March 7, 1993, he subjected the victim to sexual contact by forcible compulsion by touching her with his penis. At trial, K.F.'s testimony did not support this count, as the prosecution had expected. Therefore, the prosecutor consented to dismissal of count three. Hogan argues that if he did not touch the victim with his penis between March 5 and March 7, 1993, then he could not have raped her or had deviate sexual intercourse with her on those dates, as alleged in counts four through seven.

On direct appeal, the Appellate Division did not address this contention specifically, instead dismissing it summarily as "without merit." *People v. Hogan*, 292 A.D.2d at 835. The Court agrees that this claim lacks merit. First of all, the petitioner's use of the term "duplicitous" in framing his argument does not seem to be appropriate. A "duplicitous" count in an indictment is one that charges more than one offense. *See* N.Y. Crim. Proc. Law § 200.30.  Regardless, the Court finds that this claim is entirely without factual or legal basis, and the verdicts of guilty on counts four through seven were not rendered inconsistent by virtue of the dismissal of count three. The prosecution presented credible proof that, between March 5 and March 7, 1993, Hogan forcibly inserted his penis into the eleven-year-old victim's vagina and anus and forced her to perform oral sex on him, thereby committing first degree rape (forcible compulsion),

second degree rape (intercourse with a person incapable of consenting), first degree sodomy (deviate sexual intercourse), and second degree sodomy (deviate sexual intercourse) as charged in counts four through seven. This claim therefore affords no basis for habeas relief.

### 2. Denial of right to be present at sidebars

Hogan contends that he "was coerced into waiving his right to [be present at] material stages of trial" and that he only waived his right to be present at all sidebars because "defense counsel said that to insist on being present for side bars would bring the wrath of the Judge[.]" Petitioner's Memorandum of Law at 9 (Docket #12). Hogan concedes that "[t]his in itself might not be enough to grant reversal, but it shows the prejudice petitioner went through throughout his trial." *Id.* That is the extent of Hogan's argument on this point.

When this claim was raised on direct appeal, it was framed mainly as a violation of State law, namely, *People v. Antommarchi*, 80 N.Y.2d 247, 590 N.Y.S.2d 33, 35 (1992). *Antommarchi* held that a defendant is entitled to be present at sidebar discussions when the merits of the case are discussed or where "prospective jurors' backgrounds and their ability to weigh the evidence objectively" are discussed. *Id.* at 250.

However, federal standards regarding a defendant's right to be present at a sidebars during jury *voir dire* are "'less stringent'" than New York's standards. *Ellis v. Phillips*, No. 04Civ.7988(SHS)(AJP), 2005 WL 1637826, at *13 (S.D.N.Y. July 13, 2005) (quoting *McKnight v. Superintendent Albauch*, No. 97-CV-7415 WK, 2000 WL 1072351, at *6 (S.D.N.Y. Aug. 2, 2000) (quoting *Nichols v. Kelly*, 923 F. Supp. 420, 425 (W.D.N.Y.1996) and citing, *inter alia*, *Gaiter v. Lord*, 917 F. Supp. 145, 152 (E.D.N.Y. 1996) ("Indeed, the Federal Constitution generally does not require a defendant's presence at sidebar conferences."); *United States v.*

*Feliciano*, 223 F.3d 102, 111 (2d Cir. 2000) (in which the Second Circuit noted that it had found

no case "in which an appellate court has found a structural defect where a defendant was present

throughout but unable to hear a circumscribed portion of *voir dire*, and whose counsel was

allowed to consult with him about the limited questioning outside his hearing"), *cert. denied*, 532

U.S. 943 (2001)). Courts in this Circuit have noted that there is no clear Supreme Court

precedent supporting a claim that absence from a sidebar conference during *voir dire* violates the

Sixth Amendment. *E.g.*,  *Perez v. Greiner*, 00 Civ. 5504, 2005 WL 613183, at *5-6 (S.D.N.Y.

Mar. 14, 2005). Others have declined to find that a claim such as Hogan's is even cognizable on

habeas review. *E.g.*, *Diaz v. Herbert*, 317 F. Supp.2d 462, 473 (S.D.N.Y. 2004) ("[E]ven if

[petitioner's] rights under *Antommarchi* were violated, it does not rise to the level of a federal

constitutional violation. Therefore, any alleged violation of these rights is not cognizable on

habeas review."); *Johnson v. McGinnis*, 99 Civ. 11231, 2001 WL 740727, at *3 (S.D.N.Y. June

29, 2001) ("The right to be present at sidebar during *voir dire* derives from New York state

statutory law. Since a federal court on habeas review is limited to considering only violations of

the federal Constitution or federal statutory law, I am procedurally barred from considering this

claim.").

  In any event, even if a defendant possesses a federal constitutional right to be present at

sidebar conferences during jury selection, it is subject to waiver, so long as the waiver is

knowing and voluntary. *E.g.*, *Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir. 2002); *Polizzi v.*

*United States*, 926 F.2d 1311, 1319 (2d Cir. 1991). Either the defendant or his defense counsel

may effect a valid waiver. *E.g.*, *Polizzi v. United States*, 926 F.2d at 1322; *accord*, *e.g.*, *Dickens*

*v. Filion*, No. 02 Civ. 3450(DLC)(AJP), 2002 WL 31477701, at *9 (S.D.N.Y. Nov. 6, 2002);

*Persaud v. Mantello*, 99 CV 1861, 2002 WL 1447484, at *2 (E.D.N.Y. July 2, 2002). In this

context, the Second Circuit has held that waiver may be inferred from a defendant's conduct,

such as when a "defendant is fully apprised of the nature of the [sidebar] procedure, makes no

objection to the procedure, and has counsel present for the duration of the [sidebar

procedure]"–in such case, "a knowing waiver of the right to be present occurs[.]" *Cohen v.

Senkowski*, 290 F.3d at 491, 492.

　　　The Court has reviewed the colloquy between defense counsel, the trial court, and

defendant. The trial judge explained that he was "not a great fan of side bars" and preferred to

try cases without them. T.54.  The judge also stated that he would not "permit [Hogan] to come

up to the bench" when he talked to counsel, explaining that it was not his "style" to have

defendants appear at side bars. T.54-55 ("Either we talk alone without him, or we won't have

any side bars and I'll clear the jury out of there every time there needs to be something addressed

without them, all right? As to a side bar, it's only side bars. I don't like to go into long items at

side bars without the defendant's presence. . . ."). At that time, defense counsel conferred with

Hogan, who stated he waived his appearance at side bars. T.55.  The trial judge then engaged

Hogan in the following colloquy:

| | |
|---|---|
| The Court: | Now, you have heard[,] Mr. Hogan, what I have said here. Do you understand that if in fact there comes a time that you don't want to waive your appearance, you just let me know, all right, through your attorney and from then on we won't have side bars. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Mr. Calandra has told me that you are waiving your right to be present at side bars, not only for jury selection but for the trial itself; is that correct? |
| The Defendant: | Yes. |
| The Court: | Has anybody forced or threatened you to do this? |
| The Defendant: | No. |

| | |
|---|---|
| The Court: | Have you had any substances that would cause you not to think straight? |
| The Defendant: | No. |
| The Court: | Clear headed? |
| The Defendant: | Yes. |
| The Court: | You spoke to your attorney about this? |
| The Defendant: | Yes. |
| The Court: | Like I told you if there comes a time when you do not wish to do this any more [*sic*], bring it to my attention usually through your attorney, tell him what's happening. Do you understand that? |
| The Defendant: | Yes. |

T.55-57. Hogan's claim of coercion appears to be based upon the court's strong statements that it did not like side bars and preferred to conduct trials without them. However, this practice by the trial court is not improper, and it does not preclude a reviewing court from finding that Hogan validly waived his right to be present at side bars. *E.g.*, *Scott v. Walker*, No. 01 CV 7717(JG), 2003 WL 23100888, at *9 (E.D.N.Y. Dec. 30, 2003) (state court defendant waived right to be present at jury *voir dire* side bars after trial court explained, "There's case law that says defendants have a right to be present at those sidebar conferences. I take a waiver of the defendants presence from the sidebar conference. I can tell you it doesn't mean you don't know what's going on. Your attorney always have a right to talk to you whenever he chooses to. . . . To me it [a side bar] looks like a circus. That's my opinion. So I take a defendant's waiver at the sidebar. It doesn't mean you have to waive. Talk it over with your attorney"; district court held that "record reveal[ed] a knowing, voluntary, counseled waiver and no prejudice whatsoever").

Here, the record supports a finding that Hogan's waiver of his right to be present at sidebar conferences was express, knowing and intelligent. A trial court may fairly rely upon a defendant's sworn statements made in open court. *See United States v. Hernandez*, 242 F.3d

110, 114 (2d Cir. 2001) (finding that petitioner's ineffective assistance claim failed "on the merits because his factual assertions regarding his counsel's alleged ineffectiveness simply contradict his sworn statements at the plea allocution). The Appellate Division did not unreasonably apply clearly established federal law in finding waiver in this case. Accordingly, habeas relief will not issue on this claim.

### 3.     Erroneous *Sandoval* ruling

Hogan argues that the trial court improperly ruled that, pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (N.Y. 1974), the prosecutor could cross-examine him about his prior attempted arson conviction, in which he threw a Molotov cocktail into an occupied house, should he choose to testify.[6] T.22-23. As an initial matter, it bears noting that federal review of a state court conviction is limited to errors of constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Ordinarily, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924-25 (2d Cir. 1988).

Nothing concerning the error that Hogan alleges would exempt it from this general

---

[6] A *Sandoval* hearing is a pretrial hearing where the trial judge makes a determination as to whether any prior convictions or proof of any prior commissions of specific uncharged crimes or bad acts may be admitted into evidence at a criminal trial. *People v. Sandoval*, 34 N.Y.2d 371. In determining whether to admit evidence of other crimes, the trial court has the task of striking a balance between the probative value of the evidence and the risk of unfair prejudice to the defendant. *Sandoval*, *supra*, 34 N.Y. 2d at 416.

principle. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987). Indeed, some district

courts in this Circuit have refused to review trial courts' *Sandoval* rulings on the basis that "the

admission of prior convictions for the purpose of impeaching the defendant has been

characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus

proceeding absent a showing that the particular errors were of constitutional magnitude."*Id.*

(citing *Gilmore v. Curry*, 523 F. Supp. 1205, 1208 (S.D.N.Y. 1981); *Sams v. Warden*, *New York*

*City House of Dentention*, 507 F. Supp. 141, 143 (S.D.N.Y. 1981); *United States ex rel. Reid v.*

*Dunham*, 481 F. Supp. 366, 369 (E.D.N.Y. 1979)).

Even assuming, *arguendo*, that the challenged *Sandoval* determination is reviewable on

federal habeas, it was neither an abuse of discretion under state law nor so inherently prejudicial

as to pose an unacceptable threat to Hogan's right to a fair trial. *See Jones v. Keane*, 250 F.

Supp.2d 217, 240 (W.D.N.Y. 2002); *see also Sandoval*, 34 N.Y.2d 371, *supra* (admitting

evidence of a criminal defendant's prior convictions for the purpose of impeachment is within

the discretion of the trial judge). Hogan argues that the evidence of his prior conviction for

attempted arson was erroneously admitted because the prior bad conduct served no other

purpose than to paint him as a "bad person." The New York Court of Appeals has explained

that

> [t]o the extent . . . that the prior commission of a particular crime of calculated violence
> or of specified vicious or immoral acts significantly revealed a willingness or disposition
> on the part of the particular defendant voluntarily to place the advancement of his
> individual self-interest ahead of principle or of the interests of society, proof thereof may
> be relevant to suggest his readiness to do so again on the witness stand. A demonstrated
> determination deliberately to further self-interest at the expense of society or in
> derogation of the interests of others goes to the heart of honesty and integrity.

*People v. Sandoval*, 34 N.Y.2d at 377.  The attempted arson conviction, which arguably was a

crime of "calculated violence," was one that was within the trial court's discretion to admit under *Sandoval* as probative of Hogan's veracity. Moreover, the *Sandoval* ruling was actually favorable to Hogan because the trial court refused to permit cross-examination about a decidedly more prejudicial and inflammatory prior conviction–a first degree rape conviction from 1980 in Hogan dragged the victim into the woods at knife-point; the court found that it was too remote in time and too prejudicial. T.22-23.

Even if the *Sandoval* ruling were erroneous, which the Court has not found to be the case, the prior attempted arson conviction was not so prejudicial as to deprive Hogan of a fundamentally fair trial. *See Jones*, 250 F. Supp.2d at 240 (At petitioner's trial on charges of intentional murder, prosecution was permitted to question him regarding the rape investigation involving an eyewitness' minor daughter which was pending before a state grand jury at the time of petitioner's trial; district court held that ruling not so prejudicial as to constitute "fundamental unfairness."). In sum, the Court can no discern no error of state evidentiary law, let alone an error of federal constitutional magnitude. Accordingly, this claim does not provide a basis for habeas relief.

### 4.      Insufficiency of the evidence

Hogan asserts that the prosecution failed to prove his guilt beyond a reasonable doubt with respect to all of the charges in the indictment. A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks omitted); *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir. 1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the

trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 318-19  (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, *no* rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. *See id.*; *accord Ponnapula*, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). In making this assessment, the reviewing court  may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor make its own "assessments of the weight of the evidence[.]," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record– that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

Hogan relies on the arguments made by his appellate counsel on direct appeal–*i.e.*, that there were inconsistencies in the victim's testimony, that she delayed in reporting the incidents and never tried to escape during any of the assaults, that there allegedly was no medical evidence of sexual abuse, and that he had an alibi for the March 1993 incident. *See* Petitioner's Appellate Brief at 42-43, Respondent's Exhibit D at 54 (Docket #8).  The trial proof is detailed above in

this opinion and there is no need to repeat it here. Hogan's argument boils down to this: the jury should have believed his version of events rather than the testimony offered by the victim and the other prosecution witnesses. However, this Court is not free to second-guess the jury's credibility determinations. *E.g.*, *Huber v. Schriver*, 140 F. Supp.2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction. . . . However, under both the state law . . . and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury. . . ."); *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficient evidence claim because jury was entitled to believe State's witnesses despite inconsistencies in their testimony and State's evidence); *Soto v. Lefevre*, 651 F. Supp. 588, 592 (S.D.N.Y. 1986) (holding that federal habeas court has no power to redetermine comparative credibility of conflicting eyewitness testimony).

After reviewing the proof presented at trial, the Court has no difficulty allowing the jury's verdict to stand. As far as her delay in reporting or failure to resist, the jury had a substantial basis to credit the victim's testimony that it was futile for her to attempt to fend off Hogan, and that she believed his threats to kill her if she told anyone. Moreover, given the victim's young age, she was incapable of consenting, *see* N.Y. Penal Law 130.05(3)(a). With respect to the alleged lack of medical indicia of sexual abuse, the nurse practitioner testified that the victim did not have an intact hymen but that there was no way to tell from her examination of the victim whether any of the acts occurred or not. However, a lack of medical proof does not fatally undermine the sufficiency of a conviction for sexual abuse. *E.g.*, *People v. De Vyver*, 89 A.D.2d 745, 453 N.Y.S.2d 915 (App. Div. 3d Dept. 1982) ("Nor do we find support for

defendant's contention that [the victim's] testimony as to certain acts of sodomy falters because of a physician's opinion that the medical records failed to reflect any sexual abuse. In our view, this conflict in testimony merely presented a credibility question for the jury to resolve. The testimony they chose to believe was not incredible as a matter of law. . . . Moreover, the record discloses sufficient corroborative evidence to support the boy's testimony.") (internal citations omitted); *People v. Kelly*, 270 A.D.2d 511, 705 N.Y.S.2d 689 (App. Div. 3d Dept. 2000) (upholding conviction on charges of rape and child endangerment; verdict was neither contrary to the weight of the evidence nor based on insufficient evidence even though testimony of victim was partially contradicted by the testimony of her friend; there was no medical proof or proof of sexual relations between victim and defendant other than her testimony; and she did not report the crime until 18 months after it occurred and allegedly did so with a vengeful motive).

Furthermore, the victim's testimony was corroborated by other witnesses' testimony. For instance, Hogan's wife confirmed the existence of the pornographic videotapes that Hogan made the victim view. Both Hogan and his wife testified that he had a scar on his penis that he claimed to have been caused by a zipper injury. The victim's brother testified that on the weekend of the first incident in March 1993, the victim and Hogan went out in the morning and brought home bagels and doughnuts, corroborating the victim's testimony that Hogan had taken her out for breakfast that morning. It bears noting that the testimony of a single uncorroborated witness is sufficient to establish a defendant's guilt beyond a reasonable doubt, *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir.) (*per curiam*), *cert. denied sub nom.*, *Gore v. United States*, 441 U.S. 951 (1979), even if that witness's testimony is not entirely consistent, *Edwards v. Jones*, 720 F.2d 751, 755 (2d Cir. 1983). Here, Hogan has identified no real inconsistencies in the victim's

testimony, which was corroborated by, among others, Hogan's own wife and the victim's

brother.

Finally, the Court cannot say that acted irrationally in rejecting Hogan's claimed alibi for

the March 1993 that he was on a job site "around the clock," where, in particular, Hogan's

employer testified (1) that he was not on the job site so he did not know for certain if Hogan was

even there; (2) that he did not keep any employment records; and (3) that the permit for the work

that Hogan allegedly was doing stated that the job was not authorized to begin until several

weeks *after* the alleged assault. "[D]raw[ing] all reasonable inferences and resolv[ing] all issues

of credibility in favor of the verdict," *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989),

the Court concludes that the sufficiency of petitioner's convictions withstand habeas review.

This claim therefore is denied.

> **5.      Erroneous admission of evidence of prior uncharged crime**

Hogan contends that the trial court erroneously allowed admission of an uncharged crime

that allegedly occurred in August 1995 at Kring Point State Park in the Thousand Islands. The

evidence came in as follows during the direct testimony of the victim:

> Q:      Was there any other time or place that you can specifically remember the
>         defendant reminding you of his threats?
> A:      No.
> Q:      Was there ever a time that you went camping on the Thousand Islands?
> A:      Yes.
> . . .
> Q:      Does that refresh your memory at all as to another time?
> A:      Yes.
> . . .
> Q:      Do you remember what he said to you at Kring Point State Park in August
>         of 1995?
> A:      After another incident had happened up there he told me again not to say
>         anything.

T.388. At that point, defense counsel objected and asked to hear the victim's answer again. The
trial court dismissed the jury and told defense counsel, "[T]he reason I didn't reread it [the
objected-to answer] again is because I didn't feel like republishing something which is not
admissible in this case, period. It's evidence of an alleged uncharged crime." T.390. The trial
court asked defense counsel how he would like the jury admonished, and defense counsel
requested a mistrial. *Id.* The trial court agreed that this "could be dangerous ground" but did not
believe that the prosecutor acted in bad faith because she did not ask the question calling for the
answer to be prefaced in the way that it was. T.391. The trial court reserved decision on the
motion for a mistrial but held that he was going to strike all of the testimony regarding any
incident or threats that may have occurred at Kring Point State Park. T.398. When the jury was
recalled, the trial court instructed them as follows:

> [C]ertain testimony was elicited as to events which occurred at Kring Point State
> Park and as to the events and as to threats which were made by the defendant
> which was testified to by [the victim]. I am going to instruct you that you must
> strike those. I am striking that testimony and you must disregard that testimony in
> it's [*sic*] entirety. You must not in any manner whatsoever base any decision or
> conclusion that you will make in this case upon that testimony. It is stricken from
> the record in this case. You must disregard it, as I said, in it's [*sic*] entirety. You
> must follow my instructions on the law because that is the law that I am giving to
> you.

T.399-400. As the above review of the trial transcript makes clear, there was no error by the trial
court; rather, the court corrected the situation promptly, striking the testimony of not only the
uncharged crime (presumably another sexual assault) but also the additional threat allegedly
made by Hogan, and issuing a forceful curative instruction.

 The Second Circuit has summarized the teachings of the Supreme Court on this issue as
follows: A court "normally presume[s] that a jury will follow an instruction to disregard

inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming

probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh*,

481 U.S. 200, 208 [107 S.Ct. 1702, 1707-08, 95 L.Ed.2d 176] (1987), and a strong likelihood

that the effect of the evidence would be 'devastating' to the defendant, *Bruton v. United States*,

391 U.S. 123, 136 [88 S.Ct. 1620, 1628, 20 L.Ed.2d 476] (1968)." *United States v. Castano*, 999

F.2d 615, 618 (2d Cir. 1993) (holding that the inadvertent admission of two items of evidence

regarding weapons did not violate defendant's rights because the court ordered that the

admission be stricken); *accord Smith v. Texas*, 543 U.S. 37, 46 (2004) ("'We generally presume

that jurors follow their instructions.'") (quoting *Penry v. Johnson*, 532 U.S. 782, 799 (2001)); *see*

*also Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) ("We normally presume that a jury will

follow an instruction to disregard inadmissible evidence . . . , unless there is an 'overwhelming

probability' that the jury will be unable to follow the court's instructions."); *Shotwell Mfg. Co. v.*

*United States*, 371 U.S. 341, 367 (1962) (When a limiting instruction is clear, "[i]t must be

presumed that the jury conscientiously observed it."). In this Circuit, "[l]imiting instructions

have been found to militate against a finding of constitutional error." *Yapor v. Mazzuca*, No.

04Civ.7966(RCC)(AJP), 2005 WL 894918, at *15 (S.D.N.Y. Apr. 19, 2005) (citing *Peakes v.*

*Spitzer*, 04 Civ. 1342, 2004 WL 1366056, at *18 n. 29 (S.D.N.Y. June 16, 2004) ("The jury is

presumed to obey a court's curative instruction."); *Green v. Herbert*, 01 Civ. 11881, 2002 WL

1587133 at *16 (S.D.N.Y. July 18, 2002) (holding that admission of prior crimes evidence did

not deprive petitioner of a fair trial in light of, *inter alia*, judge's limiting instructions); *Kanani v.*

*Phillips*, No. 03 Civ. 2534PKCAJP, 2004 WL 2296128, at *19 (S.D.N.Y. Oct. 13, 2004)

(denying habeas petition where "trial judge gave a very specific limiting charge to the jury to

ensure that jurors considered information about the uncharged crimes only for appropriate purposes, and not on [petitioner's] guilt or innocence of the crimes charged in the indictment").

Here, the Appellate Division, in rejecting this claim, held that the trial court "properly exercised its discretion in denying defendant's motion for a mistrial based on the victim's reference to a prior uncharged crime committed by defendant. The curative instructions issued by the court were sufficient to alleviate any prejudice to defendant[.]" *People v. Hogan*, 292 A.D.2d at 834 (citations omitted). The Court agrees that regardless of the standard of review applied, Hogan's right to a fair trial was not prejudiced.[7]

The objectionable statement constituted a single line in the trial transcript, and the instruction, given almost immediately following the statement, was easy to understand and follow. *See Dickens v. Herbert*, No. 00 CIV. 3249, 2002 WL 1728514, at *5 (S.D.N.Y. July 25, 2002) (noting that the challenged testimony "took up a single line of trial transcript, followed by the testimony of 14 other witnesses"); *United States v. Paone*, 782 F.2d 386, 395 (2d Cir.1986) (noting that "the jury was not asked to perform olympian mental gymnastics" in considering curative instruction). Thus, Hogan's case does not present a situation where it is

---

[7] Following the passage of AEDPA, the Second Circuit repeatedly has questioned whether the "applicable test on habeas review of a state conviction remains the one set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619, 637 (1993)], or instead should be a determination whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman* [*v. California*], 386 U.S. 18, 24 (1967)," but has declined to decide the question because it concluded that the result was the same under either test. *Brown*, 355 F.3d at 91 (internal quotation marks and citations omitted); *accord Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005); *Cotto v. Herbert*, 331 F.3d 217, 253 (2d Cir. 2003); *Ryan v. Miller*, 303 F.3d 231, 254 (2d Cir. 2002); *Noble v. Kelly*, 246 F.3d 93, 101 n. 5 (2d Cir.), *cert. denied*, 534 U.S. 886 (2001); *Loliscio v. Goord*, 263 F.3d 178, 185 n. 1 (2d Cir. 2001).In *Brecht v. Abrahamson*, the Supreme Court held that on collateral review of a state conviction, an error will be found to be harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (quotation omitted). In *Chapman*, a direct review of a criminal conviction, an error may be overlooked only if it is "harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. The Second Circuit settled at least a part of this question by holding in *Gutierrez v. McGinnis* that "when a state court *explicitly conducts harmless error review* of a constitutional error, a habeas court must evaluate whether the state unreasonably applied *Chapman*." 389 F.3d 300, 306 (2d Cir. 2004) (emphasis supplied). Here, it appears that the Appellate Division implicitly conducted harmless error review.

"overwhelmingly probable" that the jury could not follow the trial court's instructions. *See Richardson v. Marsh*, 481 U.S. at 288; *see also United States v. Castano*, 999 F.2d at 618 (performing harmless error review with respect to the erroneous admission of two items of evidence regarding weapons and finding that it was "extremely unlikely" that the testimony contributed to the verdict); *Roldan v. Artuz*, 78 F. Supp.2d 260 (S.D.N.Y. 2000) (holding that even if testimony produced inadmissible evidence of uncharged crimes, the trial court's prompt curative instructions to the jury eliminated the risk of unfair prejudice); *United States v. Minicone*, 960 F.2d 1099, 1109 (2d Cir.) (three inadvertent references to uncharged crimes constituted harmless error when court struck them from record and instructed jury to disregard them), *cert. denied*, 503 U.S. 950 (1992); *United States v. Anzalone*, 626 F.2d 239, 245 (2d Cir. 1980) (deeming reference to defendant's prior incarceration harmless error). This Court has "no reason to believe that the jury in this case was incapable of obeying the curative instructions," *Greer*, 483 U.S. at 766 n.8, given to it by the trial judge. Moreover, the prosecution's case against Hogan was compelling, which further supports this Court's determination that any error relating to the victim's inadvertent mention of a prior uncharged crime was harmless. *See Castano*, 999 F.2d at 618 ("The strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless."). Given the promptness and thoroughness of the curative instruction, and the compelling evidence of petitioner's guilt, the Court has no difficulty concluding that the claimed error did not have a "substantial and injurious effect," *Brecht*, 507 U.S. at 637, on the verdict and, moreover, the Court is convinced "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *Chapman*, 386 U.S. at 24. Accordingly, habeas relief will not issue on this claim.

-30-

### 6.      Violation of Sixth Amendment right of cross-examination

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) (citing *Pointer v. Texas*, 380 U.S. 400 (1965)). However, trial court judges retain "wide latitude" insofar as the Confrontation Clause is concerned to impose "reasonable limits" on cross-examination cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *accord Henry*, 22 F.3d at 1214.  "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). The Second Circuit has explained that "[c]ross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (citing *United States v. Singh*, 628 F.2d 758, 763 (2d Cir.), *cert. denied*, 449 U.S. 1034 (1980)).

Hogan claims that his right of confrontation and cross-examination was erroneously curtailed in two respects, as discussed below.

### a.      Erroneous application of New York's Rape Shield Law

Hogan contends that the trial court "wrongly ruled that complainants [*sic*] prior false claim of rape and her active sexual history fell under the Rape Shield Law." Petitioner's Memorandum of Law at 12 (Docket #12). Hogan argues that the Rape Shield Law, C.P.L. §

60.42,[8] allows the defense to introduce evidence of a rape victim's prior sexual history "if it rebuts evidence brought in by the People." *Id.* According to Hogan, the nurse practitioner's statement that she found the victim's hymen not intact "opened the door" to allow evidence of the victim's prior sexual experience–namely that K.F. "was raped by her neighbor when she was 9 years old and that she was having sexual intercourse at the age of 11." Petitioner's *Pro Se* Letter Seeking Leave to Appeal, Respondent's App. G at 103.

Prior to trial, the prosecutor informed the judge that defense counsel had subpoenaed some of the victim's medical records and requested that the defense not be permitted to introduce them without an offer of proof. The trial court agreed that an offer of proof would be appropriate and reminded defense counsel of the Rape Shield Law, noting, "I'll look at whatever you have, and if I feel it's applicable I'll state it on the record. If I feel it's not then obviously I'll state that

---

[8] Section 60.42 provides:

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:

1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or

2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law within three years prior to the sex offense which is the subject of the prosecution; or

3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, deviate sexual intercourse or sexual contact during a given period of time; or

4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or

5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. Crim. Proc. Law § 60.42.

also. T.10-14. However, defense counsel never followed up with an offer of proof, so there is no

adverse evidentiary ruling about which Hogan can complain. Hogan therefore has failed to state

a claim upon which habeas relief may be granted.

### b.   Improper limitation of cross-examination of victim

Hogan also contends that the trial court erred in limiting defense counsel's cross-

examination of the victim regarding statements made by her in a supporting deposition given to

the police. On October 6, 1995, the victim gave a statement in which "she talked about a number

of occasions other that what's here in the indictment that she had been sexually molested by Mr.

Hogan." T.6. Defense counsel argued that "if she made that statement that that's a prior

inconsistent statement and that she can be impeached on that. If we can show that it couldn't

have happened as she told to [*sic*] the police, that affects her credibility[.]" T.7. The trial court

noted that the charges related to one of the incident to which defense counsel was referring,

which apparently had occurred in July 1995, had been dismissed, so that Hogan had "received

the ultimate benefit from that[.]" T.8. The trial court requested case law in support of defense

counsel's position. When the issue was revisited, the trial judge noted, "I don't have to rule on

that [issue] today. There is no necessity of it, but I'm – I understand what your position is and to

whatever degree is admissible under law I'll permit you to do a cross-examination of this alleged

victim. As long as it's within the confines of the law I'll read those two cases, but I don't think

I'm very far off in what your position is[.]" T.61-62. Defense counsel agreed.

During cross-examination, the victim acknowledged that, on October 6, 1995, she had

told the police that the sexual assaults had started in December 1992, but that this was incorrect.

She denied that she had told the police that between the summer of 1993 and the summer of

1994, no instances of sexual abuse took place. T.467. Defense counsel questioned her about whether she had told the police about being molested around Halloween in 1994; at first, K.F. said that she did not recall. *Id.* On redirect, she reviewed the report in question and it refreshed her recollection as to what she told the police. She explained that she thought defense counsel was referring to 1995, and reiterated that she was sexually assaulted at Hogan's house on Plank Road on Halloween in 1994. T.472-74. Defense counsel made no further argument or offer of proof regarding other prior inconsistent statements. It thus does not appear that Hogan's right of cross-examination was curtailed in any way; he was permitted to question the victim fully about any inconsistencies in her statements to the police. Again, Hogan has failed to state a claim upon which relief may be granted.

### 7.     Harsh and excessive sentence

Turning to Hogan's claim that his sentence was harsh and excessive, I note that a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

-34-

At the sentencing hearing held on March 21, 1997, defense counsel asked the court "not to give [Hogan] the maximum sentence . . . and not to attempt to make this a back door persistent felony sentence." The judge agreed with defense counsel's request to the extent that he adjudicated Hogan as a second felony offender. *See* N.Y. Penal Law § 70.04. Based on his prior conviction for first degree rape and for an unrelated attempted third degree arson in which he threw a "Molotov cocktail" into an occupied house, Hogan could have been sentenced as a persistent felony offender. *See* N.Y. Penal Law § 70.08. S.14.[9] The judge set Hogan's sentence at a minimum of twenty-two and one-half years and a maximum of forty-five years. On counts one and two, relating to the first incident that occurred on the weekend in March 1993, Hogan was sentenced to concurrent indeterminate terms of imprisonment of two and one-half to five years. These sentences were consecutive to the sentences on the remaining counts. On counts four[10] through seven, which arose from the second incident that occurred over the weekend in March 1993, Hogan was sentenced to concurrent terms of ten to twenty years on count four (first degree rape); three and one-half to seven years on count five (second degree rape); ten to twenty years on count six (first degree sodomy); and three and one-half to seven years on count seven (second degree sodomy). The sentences for counts four through seven were consecutive to the sentences for the remaining counts. Finally, on counts eight through thirteen which related to the incident at the May 1994 wedding, Hogan was sentenced to concurrent terms of ten to twenty years on count eight (first degree sodomy); three and one-half to seven years on count nine (second degree sodomy); ten to twenty years on count ten (first degree sodomy); three and one-half to

---

[9] Citations to "S.__" refer to the sentencing transcript.

[10] As discussed above, count three was dismissed at trial based on the prosecution's failure to present proof of the allegations therein.

seven years on count eleven (second degree sodomy); ten to twenty years on count twelve (first degree sodomy); and three and one-half to seven years on count thirteen (second degree sodomy). It was the stated intention of the trial court that Hogan's total sentence on all counts be an indeterminate sentence of twenty-two and one-half to forty-five years. However, by operation of New York Penal Law § 70.30(1)(e)(iv), Hogan's maximum sentence is deemed to be forty years, rather than forty-five years.

All of Hogan's sentences were within the permissible statutory range. The offenses for which Hogan was convicted were either class B felonies (*i.e.*, first degree sodomy (N.Y. Penal Law § 130.50(1)), first degree rape (N.Y. Penal Law § 130.35(1)) or class D felonies (*i.e.*, first degree sexual abuse (N.Y. Penal Law § 130.65(1)), second degree rape (N.Y. Penal Law § 130.30), second degree sodomy (N.Y. Penal Law § 130.45)).[11] As a second felony offender, the maximum sentence that Hogan could receive for a class B felony conviction was nine to twenty-five years; the minimum was required to be one-half of whatever was the maximum sentence imposed. N.Y. Penal Law § 70.06(3)(b), (4). Hogan's sentences of ten to twenty years on the class B felony convictions are therefore less than what could have been imposed. *See id.* With respect to the class D felony convictions, as a second felony offender, the maximum sentence that Hogan could receive was three to seven years; the minimum was required to be one-half of whatever was the maximum sentence imposed. *Id.* Hogan's sentences of three and one-half to seven years on the class D were within the statutory range. *See id.* Furthermore, based on the facts as found at trial–namely, that the prosecution proved three separate incidents of sexual

---

[11] Under the current New York Penal Law, Sections 130.45 and 130.50, the word "sodomy" has been changed to "criminal sexual act."

assault–Hogan's consecutive sentences were not illegal under the Penal Law; indeed, he does not make this argument. *See* N.Y. Penal Law § 70.25(2) ("When one or more sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently.").

Because Hogan's sentences were well within the bounds set by New York's Penal Law, Hogan has presented no federal constitutional question for this Court to review. This claim therefore cannot afford a basis for habeas relief.

## CONCLUSION

For the reasons stated above, John Hogan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Hogan has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        September 21, 2006
                    Rochester, New York.